**HARSHBARGER, Appellee,**

v.

**HARSHBARGER, Appellant.**

[Cite as *Harshbarger v. Harshbarger,* 158 Ohio App.3d 121, 2004-Ohio-3919.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2003–CA–36.

Decided July 23, 2004.

James R. Kirkland, for appellee.

Charles D. Lowe, for appellant.

FAIN, Presiding Judge.

{¶ 1} Defendant-appellant Dewey Dale Harshbarger Jr. appeals from a judgment and decree of divorce ordering the distribution of marital assets. He contends that the trial court abused its discretion in using the "hypothetical Social Security offset" in determining the portion of Ms. Harshbarger's Civil Service pension that is subject to division. He further contends that the trial court erred in assigning any value to the marital business known as "MacDuff's of Norman's Cay."

{¶ 2} We conclude that the record supports the error claimed by Mr. Harshbarger with regard to the pension valuation. We further find that the trial court did not abuse its discretion in determining the value of the marital business.

{¶ 3} Accordingly, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings.

I

{¶ 4} Sally Harshbarger and Dewey Harshbarger were married in 1978. In May of 2000, Ms. Harshbarger filed a complaint for divorce. The trial court held hearings on the disposition of property in June, August, September, and November 2002.

{¶ 5} Of relevance to this appeal, marital property included a portion of an island called Norman's Cay near Nassau in the Bahamas. At the time of the divorce, Mr. Harshbarger lived on the island and operated a small resort known as "MacDuff's of Norman's Cay." The parties stipulated that the fair market value of the land and buildings was $1,012,500. At the divorce hearing, Mr. Harshbarger presented the testimony of John R. Bosse, an accountant, regarding the value of the business. Bosse opined that the business had no value beyond the appraised value of the land and buildings.

{¶ 6} Ms. Harshbarger presented the testimony of David Saettel, a certified public accountant, who testified that the business had a value separate from the value of the land and buildings. Saettel testified that because Mr. Harshbarger's records did not contain all the information normally used in an appraisal, he had to use a methodology called the "treasury back-up" to determine the value of the business. Saettel testified that the business had a value of between $221,000 and $500,000.

{¶ 7} The trial court found that the evidence supported a finding that the business had a fair market value of $360,500. The business and the property were awarded to Mr. Harshbarger, subject to the requirement that he execute all documents necessary to save Ms. Harshbarger "harmless from all accounts

payable or other expenses serving the subject business." The trial court also ordered Mr. Harshbarger to pay Ms. Harshbarger the sum of $299,768.52 to equalize the division of the marital estate.[1]

{¶ 8} Also of relevance to this appeal, Ms. Harshbarger is an accountant with the Internal Revenue Service and is a participant in the Civil Service Retirement System. Mr. Harshbarger has no retirement plan or pension other than Social Security. According to the evidence adduced at trial, the marital portion of Ms. Harshbarger's pension is valued at $522,692.65, and the marital portion of Mr. Harshbarger's Social Security benefits is valued at $54,231. The trial court applied the "Social Security offset" to Ms. Harshbarger's pension in order to make a fair and equitable division of her pension benefits. In doing so, the trial court noted: "Federal employees who do not participate in the Social Security system are at a disadvantage in that their entire pension is considered marital property while a private employee's contributions to Social Security are [not subject to division]. * * * [G]overnment plan participants lose some or all of their spousal Social Security. For every three dollars a government plan participant receives from their government retirement, they lose two dollars of their spousal Social Security benefit even though their monies went into procuring that asset."

{¶ 9} Therefore, the trial court found that "[e]quity dictates that since a portion of Ms. Harshbarger's pension is in lieu of Social Security benefits, that portion should be shielded from an equitable distribution." To that end, the trial court used the "hypothetical Social Security offset" approach, deducting the sum of $158,102.61 from the marital portion of Ms. Harshbarger's benefits, and determining that it would be equitable to divide the remaining sum of $364,590.04 equally between the parties.[2]

{¶ 10} Mr. Harshbarger appeals from the decree of divorce solely with regard to these two issues.

## II

{¶ 11} Mr. Harshbarger's first assignment of error states as follows:

{¶ 12} "The trial court abused its discretion in its determination of the social security set off of husband's social security retirement against wife's civil service retirement."

---

1. The parties had many marital assets besides those relevant to this appeal.

2. The sum of $158,102.61 represents the amount of Social Security benefits Ms. Harshbarger would have earned had she been participating in the Social Security program.

■ {¶ 13} Mr. Harshbarger contends that the trial court used an improper method of determining the value of the parties' retirement funds.

■ {¶ 14} A reviewing court is limited to determining whether a trial court abused its discretion in making a property division. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597. The term "abuse of discretion" connotes a decision that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

■ {¶ 15} In general, pension and retirement benefits acquired by a spouse during the marriage are deemed marital assets that are subject to division. *Erb v. Erb* (1996), 75 Ohio St.3d 18, 20, 661 N.E.2d 175. Although a party's interest in future Social Security benefits cannot be directly divided as a marital asset, the interest must be considered in reaching an equitable distribution of the parties' pension and retirement plans. *Neel v. Neel* (1996), 113 Ohio App.3d 24, 29–30, 680 N.E.2d 207. "When considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result." *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 559 N.E.2d 1292, paragraph one of the syllabus.

{¶ 16} In this case, Mr. Harshbarger has no retirement plan of any sort other than Social Security. Ms. Harshbarger is an employee of the Internal Revenue Service and is a participant in the Civil Service Retirement System. Since Mr. Harshbarger's benefits were not subject to division, the trial court utilized a hypothetical Social Security offset to equalize the amount of the Civil Service pension to be divided.

{¶ 17} In Ohio, there is a split among the appellate courts with regard to the correct method for evaluating pension values in this type of situation. Some of the appellate districts have followed the method employed by the trial court, referred to as the hypothetical Social Security offset. This method was followed by the Eighth District Court of Appeals in *Neel v. Neel* (1996), 113 Ohio App.3d 24, 680 N.E.2d 207, in which the court opined as follows:

{¶ 18} "Thus, the question which remains unanswered for the domestic relations practitioner is the manner in which one party's interest in Social Security is to be evaluated in relation to the other party's interest in a public pension. A number of possibilities have been presented. Considering that this matter has been to this court on two previous occasions, illumination of this issue is warranted. * * *

{¶ 19} "In the leading case of *Cornbleth v. Cornbleth* (1990), 397 Pa.Super. 421, 427, 580 A.2d 369, 372, the court stated:

{¶ 20} " 'To facilitate a process of equating [public pension participants] and Social Security participants we believe it will be necessary to compute the present value of a Social Security benefit had the [public plan] participant been participating in the Social Security system. This present value should then be deducted from the present value of the [public pension] at which time a figure for the marital portion of the pension could be derived and included in the marital estate for distribution purposes. This process should result in equating, as near as possible, the two classes of individuals for equitable distribution purposes.'

{¶ 21} "This formula, which calculates a 'hypothetical Social Security benefit' for a party who has, in reality, participated in a public retirement plan, not Social Security, and then deducts that hypothetical amount from the public pension, has been adopted by several appellate districts in Ohio. * * *

{¶ 22} "[T]he *Cornbleth* method seems to be both the most thorough and the most equitable under the circumstances presented herein. Specifically, this method appears to give both parties comparable credit in terms of the years of participation in their respective programs, whereas, in practice, the other methods may well penalize the PERS participant by subjecting a larger proportionate share of that spouse's retirement to division as a marital asset. On remand, the trial court should apply the *Cornbleth* formula of calculation* * *." Id. at 30–32, 680 N.E.2d 207; accord *DeChristefero v. DeChristefero,* Trumbull App. No.2001–T–0055, 2003-Ohio-3065, 2003 WL 21377611; *Stovall v. Stovall* (Sep. 23, 1992), Summit App. No. 15335, 1992 WL 236770.

{¶ 23} Conversely, some courts have followed a method in which the Social Security benefits of a privately employed spouse are offset against the public retirement benefits of a spouse employed by the state. See, e.g. *Eickelberger v. Eickelberger* (1994), 93 Ohio App.3d 221, 228, 638 N.E.2d 130; *Bourjaily v. Bourjaily* (July 3, 2000), Licking App. No. 99 CA 120, 2000 WL 968509; *Bauer v. Bauer* (Mar. 17, 2000), Lucas App. No. L–99–1051, 2000 WL 281718.

{¶ 24} We find the method employed by the Twelfth District Court of Appeals in *Eickelberger* more persuasive.

{¶ 25} Consider a situation in which one spouse has accrued retirement benefits during the marriage under a pension plan that exempts that spouse from Social Security, and the other spouse, for whatever reason, has no retirement benefits, either under a pension plan or under Social Security. Barring unusual circumstances, an equitable division of the retirement benefits accrued during the marriage would be an equal division of those benefits—in this case, the benefits accrued by the only spouse who has accrued retirement benefits. It would not seem to be equitable, and we are aware of no cases finding it to be equitable, to offset against the retirement benefits accrued during the marriage by the only spouse who has accrued retirement benefits of any kind an amount equal to the

hypothetical Social Security benefits that that spouse would have accrued had that spouse been under Social Security. For example, the husband has accrued during the marriage retirement benefits that will pay $5,000 a month, but would have accrued Social Security benefits paying $2,000 a month had he been under Social Security. Because all of the retirement benefits—$5,000 per month—were accrued during the marriage, it is obviously equitable to divide those benefits equally, so that each spouse receives $2,500 per month. But if the husband's hypothesized Social Security benefits in the amount of $2,000 per month are first deducted from his pension, leaving $3,000 to be divided, his wife will receive $1,500 per month, and he will receive $3,500 per month, which is not an equal division, and therefore an inequitable division, barring unusual circumstances.

{¶ 26} Using the non–Social Security spouse's hypothetical Social Security benefit instead of the Social Security spouse's actual Social Security benefit approaches this obviously inequitable result as the Social Security spouse's actual Social Security benefit approaches zero.

{¶ 27} Where the non–Social Security spouse's retirement benefits accrued during the marriage exceed the Social Security spouse's Social Security benefits accrued during the marriage, using the Social Security spouse's actual social security benefits as an offset will always result in the equivalent of an equal division of the retirement benefits accrued during the marriage and is therefore the more equitable method of division, barring unusual circumstances justifying an unequal division.

{¶ 28} We conclude that it is an abuse of discretion to apply the hypothetical Social Security offset instead of offsetting the actual amount of the Social Security spouse's Social Security benefits accrued during the marriage against the retirement benefits of the non–Social Security spouse accrued during the marriage.

{¶ 29} The first assignment of error is sustained.

## III

{¶ 30} The second assignment of error asserted by Mr. Harshbarger is:

{¶ 31} "The trial court abused its discretion in assigning any value to the business known as 'MacDuff's of Norman's Cay'; and the trial court's finding was against the manifest weight of the evidence."

{¶ 32} Mr. Harshbarger contends that the trial court erred by assigning any value to the business known as "MacDuff's" and that its valuation of the business is not supported by the evidence.

{¶ 33} In reaching its decision regarding the value of the business, the trial court specifically acknowledged the wide range of values advanced by Ms. Harshbarger's expert and found that the broad range "has to do with the unique qualities involved in the business itself and the lack of comparable businesses in a similar market." The trial court went on to state as follows:

{¶ 34} "[A]dding to the difficulty in the appraisal process is Mr. Harshbarger's antiquated record keeping technique. Although he denies it, the credible evidence suggests that Mr. Harshbarger's less than sophisticated bookkeeping techniques are, in fact, by his own design and are not actually reflective of the income which he receives from the business. Mr. Harshbarger has not filed any Federal income tax returns after 1995, with the exception of the joint return which he filed with Ms. Harshbarger for the year 1998. He has not filed any State of Ohio tax returns since 1984 and even though his wife is employed by the IRS, he has openly admitted that he has no intentions of paying any taxes any more. To compound this problem further, [the evidence] seems to suggest that contrary to Mr. Harshbarger's contentions, he is, in fact, required to file tax returns and pay Social Security tax for the business which he has been running known as 'MacDuff's'."

{¶ 35} In reviewing a claim that a judgment is against the manifest weight of the evidence, we are guided by the holding that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Furthermore, we must presume that the findings of the trier of fact are correct, because the trier of fact is best able to observe the witnesses and use those observations in weighing the credibility of the testimony. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 10 OBR 408, 461 N.E.2d 1273.

{¶ 36} In this case, it is clear that MacDuff's was, at the time of the trial, operated as an ongoing business that generates income and that attracts visitors who rent the rental units and use the bar and restaurant. We conclude that the trial court did not abuse its discretion in rejecting the testimony of Mr. Harshbarger's expert, who testified that the business had no value apart from the land and buildings.

{¶ 37} Furthermore, we conclude that a review of the record in this case supports the trial court's determination that Mr. Harshbarger's inadequate records hampered the determination of a value for the business. We also conclude that the record demonstrates that, based upon the information available for review, Ms. Harshbarger's expert used valid accounting methods to establish

a range of values for the business. Finally, we find no abuse of discretion in the trial court's valuation of the business.

{¶ 38} The second assignment of error is overruled.

## IV

{¶ 39} Mr. Harshbarger's first assignment of error having been sustained and his second assignment of error having been overruled, that part of the judgment of the trial court dividing Ms. Harshbarger's Civil Service Retirement System benefits is reversed. The judgment of the trial court is affirmed in all other respects, and this cause is remanded for further proceedings in accordance with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

WOLFF and FREDERICK N. YOUNG, JJ., concur.