KESTNER, Appellee,

v.

KESTNER, Appellant.

[Cite as *Kestner v. Kestner,* 173 Ohio App.3d 632, 2007-Ohio-6222.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 06 CO 39.

Decided Nov. 15, 2007.

634

Kyde L. Kell, for appellee.

Peter S. Olivito, for appellant.

---

DeGenaro, Presiding Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-appellant, Frank Kestner, appeals the decision of the Columbiana County Court of Common Pleas that granted a divorce between him and plaintiff-appellee, Margaret Kestner. On appeal, Frank challenges both the trial court's division of the marital property and its refusal to deviate from the standard child-support obligation.

{¶ 2} Frank's arguments about child support are meritless because Frank stipulated that the trial court should continue its temporary child-support order as its permanent order, and the trial court did so. However, Frank's arguments

about the property division are meritorious. The trial court's property division apparently relied on facts presented in the parties' trial briefs, rather than on the facts that were admitted at the divorce hearing. A trial court cannot base a decision on an issue disputed by the parties without some evidence on that issue being introduced by the parties. Facts presented in a trial brief are not evidence. Because the trial court's valuation of some of the parties' assets was not based on properly introduced evidence, we must reverse the trial court's division of the marital property and remand this cause for further proceedings.

## Facts

{¶ 3} Frank and Margaret were married in 1999, and two children were born of the marriage. The parties separated in September 2004, and Margaret filed for divorce on August 23, 2005. On November 15, 2005, the parties entered an agreed entry which ordered, among other things, that Frank pay $326.87 biweekly in child support. The case proceeded to trial on May 10, 2006. On that date, both Frank and Margaret filed trial briefs. They also stipulated to various matters, including that the temporary child-support order would become the permanent child-support order.

{¶ 4} The hearing focused on the division of the marital property and discussed both the four vehicles owned by the parties and the marital residence. After the hearing, the parties submitted additional trial briefs, each of which included facts that were not admitted at the hearing.

{¶ 5} On June 1, 2006, the trial court entered judgment. It continued the temporary child-support award as the permanent award, valued the marital property, and divided that marital property between the parties. Its valuations of the vehicles relied on the facts in the parties' trial briefs, rather than on the facts testified to at the hearing.

{¶ 6} Frank has raised two assignments of error on appeal, one challenging the manner in which the trial court divided the couple's marital property and the other challenging the manner in which it calculated child support. We review both child-support orders and property divisions under the same standard: abuse of discretion. *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, at ¶ 5; *Pauly v. Pauly* (1997), 80 Ohio St.3d 386, 390, 686 N.E.2d 1108. The term "abuse of discretion" implies more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. We may not substitute our judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597. Further, we will not independently review the weight of the evidence but

will be guided by the presumption that the trial court's findings are correct. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846.

## Property Division

{¶ 7} In his first assignment of error, Frank argues:

{¶ 8} "The trial court abused its discretion by failing to order an equitable distribution of the marital and separate property of the parties."

{¶ 9} Here, Frank challenges the trial court's valuation of two different types of property: the parties' real estate and motor vehicles. He contends that these mistaken valuations, along with other aspects of the property division, mean that the actual property division was inequitable, and therefore an abuse of discretion.

{¶ 10} A domestic relations court is required, when granting a divorce, to equitably divide and distribute the marital property between the parties. R.C. 3105.171(B); *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413. When dividing marital property, the trial court must divide it equally between the parties unless an equal division would be inequitable. R.C. 3105.171(C)(1); see, also, *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293 (A potentially equal division of the marital property is the starting point of the trial court's analysis). In determining what is an equitable division of the marital property, the court must consider "all relevant factors," including those found in R.C. 3105.171(F). Id. Pursuant to R.C. 3105.171(F), a trial court that is making a division of marital property must consider the duration of the marriage, the assets and liabilities of the spouses, the desirability of awarding the family home—or the right to reside in the family home for reasonable periods of time—to the spouse with custody of the children of the marriage, the liquidity of the property to be distributed, the economic desirability of retaining intact an asset or an interest in an asset, the tax consequences of the property division upon the respective awards to be made to each spouse, the costs of sale, whether it is necessary that an asset be sold to effectuate an equitable distribution of property, any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses, and any other factor the court expressly finds to be relevant and equitable.

{¶ 11} When dividing marital property, a court must "determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). Pursuant to R.C. 3105.171(G), a trial court must indicate the basis for its division of the marital property in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable, and in accordance with the law. *Kaechele v.*

*Kaechele* (1988), 35 Ohio St.3d 93, 97, 518 N.E.2d 1197. As a part of these findings, the trial court must assign a value to all the marital property. *Spychalski v. Spychalski* (1992), 80 Ohio App.3d 10, 608 N.E.2d 802; *Hruby v. Hruby* (June 11, 1997), 7th Dist. No. 93–C–9, at 3, 1997 WL 321608; R.C. 3105.171(B). A trial court is required only to indicate the basis for its decision and does not have to explain its reasoning in detail. *Davis v. Davis* (Dec. 26, 2001), 7th Dist. No. 2000 CO 31, at 5, 2001 WL 1667852.

{¶ 12} In this case, the trial court found that the parties had $9,550 in equity in the marital home, equity of $2,953 in a Dodge Durango, equity of $5,000 in a Nissan Frontier, equity of $2,500 in a Chevrolet Blazer, and equity of $695 in a Chevrolet Camaro. The parties also owned horses worth $1,850 and a horse trailer worth $400. The parties' household goods were split equally between them.

{¶ 13} The parties had three credit card bills: one for $7,501.23, another for $700, and a third for $1,000. The credit card bills of $700 and $1,000 were Margaret's separate property. The parties also owed a $56 dental bill, a $123 hospital bill, and an emergency room bill for $54.

{¶ 14} The trial court awarded the marital residence, the Durango, the Frontier, and the Blazer to Frank. It also made him responsible for the debt on the Durango, the hospital and emergency room bills, and the $7,501.23 credit card bill. It further ordered that Frank pay Margaret $5,000 to equalize the distribution of marital assets.

{¶ 15} Margaret was awarded the horses, the horse trailer, and the Camaro. She was made responsible for the payments on the Camaro, the dental bill, and the two other credit card bills. She was further ordered to pay Frank $350 to equalize the distribution of assets.

{¶ 16} After adding up the relative values of the assets and liabilities awarded to each party, the trial court awarded Frank a total of $7,674.77 and Margaret a total of $7,539.00. This distribution would be an equitable distribution of the assets. However, Frank argues that it is not, because the trial court incorrectly valued some the marital estate and the vehicles.

{¶ 17} We review factual determinations of the value of marital property to see whether they are against the manifest weight of the evidence. *Fenstermaker v. Fenstermaker*, 11th Dist. No. 2004–T–0097, 2005-Ohio-5604, 2005 WL 2709571, at ¶ 13–14. The trial court's judgment will not be reversed as being against the manifest weight of the evidence if the court's judgment is supported by some competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. A reviewing court should be guided by the presumption that the finding of the trial

court is correct, because the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and use those observations in weighing the credibility of the testimony. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.

{¶ 18} Frank argues that the trial court incorrectly valued the marital real estate. The parties stipulated that the property was assessed for tax purposes at a value of $40,550. Frank contends that this was not the actual value of the property because it needed a new roof and new drains.

{¶ 19} The evidence supports the trial court's decision to value the property at the assessed value. First, Frank has not proven that the assessed value of the house has not taken its present condition into consideration. Second, he has not provided any evidence of how the needed repairs affected the value of the house. Third, Frank's statement was self-serving and uncorroborated. Finally, the trial court's local rules state that it will generally not accept a party's opinion of the value of real estate, especially if the valuation of the county auditor is available. Loc.R. 9.10(A). Frank's challenge to the trial court's valuation of the marital real estate is meritless.

{¶ 20} Frank also challenges the values assigned to the parties' motor vehicles by the trial court. The parties owned four vehicles at the time of the divorce: a Durango, a Frontier, a Blazer, and a Camaro. The trial court valued these vehicles, respectively, at $8,670, $5,000, $2,500, and $5,695. However, the testimony at the divorce hearing does not support these valuations. Margaret did not testify about the value of any of these vehicles. Frank testified that the Durango was worth $3,000, that the Frontier was worth between $2,000 and $2,500, and that the Blazer was worth about $400 to 500. He later stated that Margaret bought the Camaro about 18 months before the hearing for around $5,000.

{¶ 21} On the day of the hearing, both parties filed trial briefs with the court that, among other things, assigned values to the vehicles. Frank's trial brief said that the Durango was worth $6,000, the Frontier was worth $5,000, that the Blazer was worth $1,000, and that the Camaro was worth $1,200. Frank's brief did not state the source of these valuations. Margaret's brief stated that the Durango was worth $8,700, the Frontier was worth $5,250, the Blazer was worth $3,925, and the Camaro was worth $4,650. These valuations were taken from NADA guides to car values and reflected the average value for that type of vehicle with a minimum of 75,000 miles.

{¶ 22} After the hearing, the parties each filed a new trial brief. Margaret's brief reflected the same values for the vehicles, but Frank's valuations changed. He now valued the Durango at $8,670, the Frontier at $4,725, the Blazer at $500,

and the Camaro at \$5,695. Neither party had placed any value on the vehicles in their financial affidavits.

{¶ 23} As can be seen, the values the trial court assigned to most of the vehicles are either the same as or similar to the values Frank assigned in his post-trial brief. For example, the trial court applies the values to the Durango and Camaro that Frank listed in that brief. The trial court's valuation of the Frontier was similar to the value Frank gave in his post-trial brief. The only major difference between the values in Frank's post-trial brief is that of the Blazer, which he valued in that brief at \$500, but that the trial court valued at \$2,500.

{¶ 24} Parties may, of course, agree to submit issues to a trial court by brief, rather than by trial. *Kevdzija v. Kevdzija,* 166 Ohio App.3d 276, 2006-Ohio-1723, 850 N.E.2d 734, at ¶ 4. But a trial court may not decide an issue on the briefs if the parties have not agreed to this procedure, because it is akin to treating the trial briefs as a motion for summary judgment without giving notice of such an intent. *Columbus Corp. v. Cuyahoga Cty.* (1990), 68 Ohio App.3d 713, 716, 589 N.E.2d 467. Furthermore, courts should use this procedure only when the facts are undisputed, such as when the parties have stipulated to the relevant facts. *Hosler v. Porter* (Feb. 15, 2002), 11th Dist. No. 2000-T-0124, 2002 WL 233498. Courts may not rely on facts in a trial brief that were not actually admitted at trial when reaching a decision. *Jump v. Jump* (Nov. 30, 2000), 6th Dist. No. L-00-1040 at 4, 2000 WL 1752691.

{¶ 25} In this case, it is apparent that the trial court used the inadmissible facts in the parties' trial briefs when valuing the vehicles. This was improper. Those facts were not admitted at trial and, therefore, were not subject to the type of examination that could establish their reliability. Accordingly, the trial court abused its discretion when it divided the parties' marital property. Frank's first assignment of error is meritorious.

## Child Support

{¶ 26} In his second assignment of error, Frank argues:

{¶ 27} "The trial court erred in failing to grant Appellant a deviation in the child support obligation ordered to be paid for the minor children."

{¶ 28} Frank contends that the trial court erred when it set Frank's biweekly child support obligation at \$326.87. However, this was the amount the trial court ordered in its temporary child support order, and the parties stipulated before trial that this temporary order "shall become the permanent order of the Court."

{¶ 29} A stipulation is a voluntary agreement entered into between opposing parties concerning the disposition of some relevant point in order to eliminate the need for proof on an issue or to narrow the range of issues to be litigated. *Wilson v. Harvey*, 164 Ohio App.3d 278, 2005-Ohio-5722, 842 N.E.2d 83, at ¶ 12. " '[W]hen a stipulation of facts is handed up by the adversaries in a case, the trier of facts must accept what is set forth as a statement of settled fact that is undisputed and binding upon the parties to the agreement.' " *DiSanto v. Safeco Ins. of Am.*, 168 Ohio App.3d 649, 2006-Ohio-4940, 861 N.E.2d 573, at ¶ 53, quoting *Newhouse v. Sumner* (Aug. 6, 1986), 1st Dist. No. C–850665, at 3–4, 1986 WL 8516.

{¶ 30} In the past, courts have allowed parties to a divorce action to stipulate to issues involving children. See *Kevdzija v. Kevdzija*, 166 Ohio App.3d 276, 850 N.E.2d 734, 2006-Ohio-1723, at ¶ 46 (allowing stipulation to nonresidential parent's visitation); *In re Marriage of Shore* (1999), 135 Ohio App.3d 374, 381, 734 N.E.2d 395 (parties to a divorce can agree as to how child is religiously trained); *Troha v. Troha* (1995), 105 Ohio App.3d 327, 332, 663 N.E.2d 1319 (parents can stipulate that child support will continue even after child reaches age of majority). Courts have specifically allowed parties to stipulate to the amount of child support one parent must pay to another. *Baddam–Reddy v. Baddam–Reddy*, 8th Dist. No. 85038, 2005-Ohio-3432, 2005 WL 1541080, at ¶ 8; *Earl v. Earl*, 9th Dist. No. 04CA008432, 2004-Ohio-5684, 2004 WL 2390990, at ¶ 7.

{¶ 31} In this case, Frank stipulated that the trial court's temporary child-support order would become its permanent child-support order. Accordingly, the trial court did not abuse its discretion when it ordered child support in that amount. Frank's second assignment of error is meritless.

## Conclusion

{¶ 32} In this case, the trial court did not abuse its discretion when making its child-support order. However, it did abuse its discretion when dividing the parties' marital property by relying on facts in the parties' trial briefs that were not introduced at trial. Accordingly, the judgment of the trial court with regard to its child support order is affirmed, but is reversed with regard to the division of property, and this cause is remanded to the trial court for further proceedings.

Judgment affirmed in part
and reversed in part,
and cause remanded.

DONOFRIO and VUKOVICH, JJ., concur.