[Cite as *Pentella v. Pentella*, 2014-Ohio-1113.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

VINCENT J. PENTELLA, JR.          :
                                  :          Appellate Case No. 25705
    Plaintiff-Appellant           :
                                  :          Trial Court Case No. 11-DR-1319
v.                                :
                                  :
VICKI V. PENTELLA                 :          (Civil Appeal from Common Pleas
                                  :           Court, Domestic Relations)
    Defendant-Appellee        :
                                  :
                          . . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of March, 2014.

. . . . . . . . . . .

RICHARD A. BOUCHER, Atty. Reg. #0033614, Boucher & Boucher Co., L.P.A., 12 West
Monument Avenue, Suite 200, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

JOHN RUFFOLO, Atty. Reg. #0006234, Ruffolo, Stone & Dressel, 7501 Paragon Road, Dayton,
Ohio 45459
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}     Plaintiff-appellant Vincent Pentella, Jr., appeals from a judgment and decree of

divorce.    He contends that the trial court erred in its division of marital property and in its

determination of his non-marital portion of certain assets.    He further contends that the trial court

erred by retaining jurisdiction over the issue of spousal support for forty months.

**{¶ 2}** We conclude that the trial court neither abused its discretion nor erred with regard to its valuation and division of marital assets, and determination of non-marital assets. We further find no abuse of discretion with regard to the trial court's decision to retain jurisdiction over the issue of spousal support for forty months.

**{¶ 3}** Accordingly, the judgment of the trial court is Affirmed.


## I.   The Course of Proceedings

**{¶ 4}** Vincent and Vicki Pentella were married on November 2, 2002. No children were born of the marriage. Mr. Pentella brought this action for divorce in November 2011. Following a hearing, the trial court rendered a judgment and decree of divorce, from which Mr. Pentella appeals.


## II.   The Trial Court Did Not Err in its Division,
## Valuation, and Characterization of Assets

**{¶ 5}** Mr. Pentella's First Assignment of Error states as follows:

THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN ITS DIVISION OF MARITAL PROPERTY BETWEEN APPELLANT AND APPELLEE BECAUSE THE SAME WAS NOT EQUITABLY DIVIDED.

**{¶ 6}** Mr. Pentella contends that the trial court abused its discretion with regard to the division of numerous assets. He argues that the trial court's decision with regard to these assets is inequitable because the trial court's division "favored" Ms. Pentella.

**{¶ 7}** In divorce proceedings the trial court must divide the parties' separate and marital

properties equitably. R.C. 3105.171(B). Marital property shall be divided equally, unless a different division would be equitable. R.C. 3105.171(C). Marital property includes all real and personal properties or interests therein that are acquired by either or both spouses during the marriage. R.C. 3105.171(A)(3)(a)(i). In determining what constitutes an equitable division of marital property, the trial court must consider all relevant factors, including those set forth in R.C. 3105.171(F). *Kestner v. Kestner,* 173 Ohio App.3d 632, 2007-Ohio-6222, 879 N.E.2d 849, ¶ 10 (7th Dist.).

{¶ 8} Appellate courts review a trial court's division of property under an abuse of discretion standard, but a trial court's classification of property as marital or separate must be supported by the manifest weight of the evidence. *Mays v. Mays,* 2d Dist. Miami No.2000-CA-54, 2001-Ohio-1450. When we consider manifest weight arguments, we "review the evidence, and * * * determine whether, when appropriate deference is given to the factual conclusion of the trial court, the evidence persuades us by the requisite burden of proof." *Cooper v. Cooper,* 2d Dist. Greene Nos. 2007-CA-76 and 2007-CA-77, 2008-Ohio-4731, at ¶ 25. "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *AAAA Enterprises, Inc. v. River Place Community Redevelopment,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *Id.* A decision is unreasonable if there is no sound reasoning process that would support that decision. *Id.*

{¶ 9} We begin with Mr. Pentella's claim that the trial court erred by ordering him to pay one-half of the costs of repair and cleaning incurred by Ms. Pentella with regard to the

marital real estate. The record shows that the parties agreed to sell the real estate and to divide the proceeds equally. Ms. Pentella testified that the realtor hired to sell the property made recommendations for the preparation of the house for sale. Ms. Pentella also testified that she incurred $3,501 for necessary repairs, including carpet cleaning, window cleaning, replacement of some carpet, repair to the furnace, dry wall repair and screen replacement, all as recommended by the realtor. Mr. Pentella claims that since he had not resided in the residence for approximately one year, all repairs and cleaning costs were incurred as a result of Ms. Pentella's "acts and/or omissions."

{¶ 10} The trial court found that Ms. Pentella's testimony regarding the repairs was credible and that Mr. Pentella should be held responsible for one-half of the costs of preparing the house for sale. We find no abuse of discretion in this regard.

{¶ 11} Next Mr. Pentella complains that the trial court erred with regard to the division of the parties' joint account labeled as Chase Account Number "X". Ms. Pentella withdrew the balance of this account, in the amount of $260,000, prior to the divorce hearing. She gave Mr. Pentella the sum of $125,000 as his share of the account. She testified that she withheld $5,000 from his share due to the fact that he had received a $10,000 check from their insurance company, which he did not split with her. Mr. Pentella, conversely, testified that he deposited the insurance check into another account, but then transferred the monies to Chase Account "X". Thus, he contends that the trial court erred by failing to credit him with the deposit.

{¶ 12} The trial court found that Mr. Pentella failed to demonstrate that the money was deposited into Chase Account "X". Mr. Pentella did present evidence that he made a $10,000 deposit into a different account, which appears to have been in his name, only. We find no

support in the record to corroborate his claim that he transferred this money into the joint Chase account. Accordingly, we conclude that the trial court did not abuse its discretion by rejecting Mr. Pentella's claim for credit for one-half of the $10,000.

{¶ 13} Mr. Pentella next contends that the trial court abused its discretion by failing to give him credit for non-marital funds in his E-Trade Fund. As discussed in connection with Assignment of Error Number Four in Part III, below, we find this argument to be without merit.

{¶ 14} Similarly, Mr. Pentella contends that the trial court abused its discretion with regard to the division of Chase Account Numbers "X" and "Y". As discussed in connection with Assignments of Error Two and Three in Parts III, below, we find these arguments to be without merit.

{¶ 15} Next Mr. Pentella contends that the trial court erred by failing to require Ms. Pentella to repay him the sum of $2,475, representing one-half of the amount of monies expended by checks written to "Cash" by Ms. Pentella. He argues that Ms. Pentella took these monies and placed them in her own accounts in anticipation of divorce. Ms. Pentella testified that these amounts, written over the course of several months, were spent on The Optimist Club luncheons and other functions. She also testified that some of the monies were spent on gifts, and that she did not retain the funds in her separate accounts.

{¶ 16} As the trial court noted, other than Mr. Pentella's claim that his wife was taking these monies to hide, there is no evidence in the record that they were spent on anything other than expenses. The trial court, as the trier of fact, is entitled to decide what credit, if any, to accord Mr. Pentella's testimony. The trial court chose to give more credence to Ms. Pentella's

testimony. We find nothing in the record to persuade us that the trial court abused its discretion in this regard, or that its decision is against the manifest weight of the evidence.

{¶ 17} Mr. Pentella also claims that he is entitled to half of all monies received by Ms. Pentella from her ex-husband as reimbursement for her daughter's tuition and books for 2011. In support, he notes that he and Ms. Pentella advanced the approximate sum of $2,200 for tuition and books. He further testified that Ms. Pentella admitted to him that her ex-husband reimbursed her for two-thirds of that advance and that she did not split it with him as was their custom. Thus, he argues that he is entitled to the sum of $944 as his share of the reimbursement.

{¶ 18} The court found that the parties made a "marital decision" to pay Ms. Pentella's daughter's tuition. The court further found no evidence, other than Mr. Pentella's testimony, that Ms. Pentella received any reimbursement of that payment. The trial court, again, chose not to credit Mr. Pentella's claim and denied the claim. We find no abuse of discretion on this record.

{¶ 19} Mr. Pentella also contends that the trial court abused its discretion when it denied his request for reimbursement of bills he paid during the pendency of the divorce. Specifically he claims that he paid the sum of $9,577.34 in "nonbasic [sic] expenses on behalf of [Ms. Pentella] including, but not limited to, homeowner association fees, lawn service, landscaping, sprinkler system, alarm system, AT&T u-verse cable for seven televisions, and homeowner's insurance." He further claims that he paid almost $12,000 for shared expenses, including real estate taxes, income taxes and health insurance coverage.

{¶ 20} The trial court denied Mr. Pentella's claim for reimbursement of 100% of the "non-basic" expenses and for one-half of the shared expenses. The trial court found that it was

equitable for Mr. Pentella to pay these expenses.

{¶ 21} A review of the record shows that Mr. Pentella was awarded at least seven different savings accounts as well as some stock options that appear to have been Mr Pentella's non-marital property. The values of these accounts are not in the record, except that one account does show a value in excess of $250,000. The record does not show that Ms. Pentella had any non-marital accounts other than a checking account with a $3,000 balance. Based upon the number of non-marital accounts received by Mr. Pentella, at least one of which was worth over $250,000, we do not find that the trial court abused its discretion by concluding that it was equitable for Mr. Pentella to be solely responsible for the bills paid during the pendency of the divorce.

{¶ 22} Next, Mr. Pentella contends that the trial court erroneously found that the parties had equitably divided their personal property. In support, he contends that there was "no testimony or evidence presented which would warrant such a finding." He further argues that he did not receive some bar stools, chairs, and artwork, which he claims he is entitled to and which were worth $3,000.

{¶ 23} We conclude that the trial court did not abuse its discretion in finding that the personal property had been equitably divided. Nothwithstanding Mr. Pentella's claim that there was no evidence to support that finding, we note that Ms. Pentella testified that Mr. Pentella had received all the personalty he had requested, and that the division was equitable. The trial court was free to, and did, credit Ms. Pentella's testimony.

{¶ 24} Mr. Pentella contends that the trial court abused its discretion by requiring him to reimburse Ms. Pentella for one-half of the $15,000 loan made to Mr. Pentella's ex-wife during

the course of the subject marriage. He does not deny that the monies loaned were marital property; he contends that both he and his current wife did not anticipate repayment of the loan.

{¶ 25} We find no abuse of discretion. The trial court only made a contingent order of reimbursement in the event that the former wife should repay the loan made to her by Mr. and Ms. Pentella.

{¶ 26} The next contested item involves American Express Points earned by reason of Mr. Pentella's travel for work, which the trial court ordered to be equally divided. Mr. Pentella claims that because he was the one "that suffered through countless hours of travel to earn the points," the points should not have been divided with Ms. Pentella. We find this argument without merit. The points, like Mr. Pentella's salary, were earned during the marriage, and constitute marital property.

{¶ 27} Finally Mr. Pentella contends that the trial court erred with regard to the division of Ms. Pentella's personal checking account. The trial court ordered an equal division of the account, which the court valued at $300. Mr. Pentella contends that the account should have been valued at $5,460, which he claims was its value at the time the divorce complaint was filed. He bases this claim upon Ms. Pentella's testimony that she had deposited her unemployment checks of $140, which she received for approximately eighteen months, into that account.

{¶ 28} We conclude that the trial court did not err in this regard. According to the record, Ms. Pentella had not worked for at least three years prior to the divorce. Thus, any unemployment benefits received during the marriage would presumably constitute marital assets. But no evidence was presented to indicate that the monies were not used for marital expenses. Thus, we find no abuse of discretion with regard to the trial court's decision to value the account

at its present value of $300.

{¶ 29}   We conclude that Mr. Pentella has failed to demonstrate that the trial court abused its discretion or erred with regard to the division and valuation of any of the above-cited assets.   Thus, the First Assignment of Error is overruled.

### III.   In the Absence of Corroborating Evidence, the Trial Court's Refusal to Find that Certain Amounts of Specified Accounts Constituted Mr. Pentella's Separate Property Is Neither an Abuse of Discretion Nor Against the Manifest Weight of the Evidence

{¶ 30}   Mr. Pentella's Second Assignment of Error provides:

THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN ORDERING THE EQUAL DIVISION OF THE CHASE JOINT SAVINGS ACCOUNT NO. ["X"] [WHICH WAS IMPROPERLY LISTED IN THE DECISION AS ACCOUNT NO. "Z"] BECAUSE APPELLANT WAS NOT PROPERLY CREDITED FOR HIS NON-MARITAL PORTION OF THE ACCOUNT.

{¶ 31}   Mr. Pentella contends that the trial court made a second error with regard to the Chase Account Number "X", which he notes the trial court mislabeled as Chase Account No. "Z".   Specifically, Mr. Pentella claims that he should have been awarded the sum of $42,000 as pre-marital assets from that account prior to the division of the account.

{¶ 32}   Generally, the party claiming that an asset is separate property has the burden of proving the claim by a preponderance of the evidence.   *Peck v. Peck,* 96 Ohio App.3d 731, 734,

645 N.E.2d 1300 (12th Dist.1994). "Oral testimony as evidence, without corroboration, may or may not satisfy the burden." *Maloney v. Maloney,* 160 Ohio App.3d 209, 2005-Ohio-1368, ¶ 23 (2d Dist.), citing *Fisher v. Fisher,* 2d Dist. Montgomery No. 20398, 2004-Ohio-7255. "Because traceability presents a question of fact, we must give deference to the trial court's findings, and the court's decision on the matter will not be reversed as against the manifest weight of the evidence when it is supported by competent credible evidence." *Id.*

**{¶ 33}** Mr. Pentella did acquire Chase Savings Account Number "X" prior to the marriage. However, at trial he acknowledged that he had no documentation regarding the pre-marital value of the account. He further testified that to the "best of [his] knowledge" that value was approximately $42,000. Again, the trial court was in the best position to determine Mr. Pentella's credibility and to assign little or no weight thereto. We conclude that the trial court's refusal to find a portion of this account to constitute Mr. Pentella's separate property is neither an abuse of discretion nor against the manifest weight of the evidence.

**{¶ 34}** Accordingly, the Second Assignment of Error is overruled.

**{¶ 35}** Mr. Pentella asserts the following as his Third Assignment of Error:

THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN
FAILING TO PROPERLY CREDIT APPELLANT FOR HIS NON-MARITAL
PORTION OF THE CHASE CHECKING ACCOUNT NO. ["Y"].

**{¶ 36}** In this assignment of error, Mr. Pentella also claims that the trial court failed to properly credit him for his non-marital portion of Chase Account Number "Y". In support, he argues that he presented evidence that the account earned interest income prior to the marriage.

**{¶ 37}** Mr. Pentella did submit documentary evidence indicating that this account had earned approximately $50 in interest during tax year 2002 (prior to the marriage). While he did testify that he had approximately $13,000 in pre-marital funds in that account, he presented no other supporting documentary evidence regarding this account. Indeed, it is not clear from the record whether that account was in existence at the time of the divorce.

**{¶ 38}** We conclude that the trial court's finding that Mr. Pentella failed to establish that any pre-marital funds were in this account at the time the parties married is neither an abuse of discretion nor against the manifest weight of the evidence. Thus, the Third Assignment of Error is overruled.

**{¶ 39}** The Fourth Assignment of Error asserted by Mr. Pentella is:

THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DETERMINING APPELLANT'S NON-MARITAL PORTION OF THE E-TRADE FUND FKA HARRISdirect ACCOUNT.

**{¶ 40}** Mr. Pentella contends that the trial court erred with regard to the division of an E-Trade Fund because the trial court did not award any portion of the account as pre-marital. He argues that he provided evidence that he opened the account with Harris Direct in the 1990's. He acknowledges that on January 1, 2003, about two months after the marriage, the value of the account was $27,892. He further argues that he later transferred the sum of $37,604.67 from that account into a joint savings account. Thus, he contends that the difference between the 2003 value and the 2006 value constitutes capital gains, to which he is entitled as pre-marital assets.

**{¶ 41}** The trial court made the following findings with regard to this account:

[Mr. Pentella] acknowledged that he did not have any explicit documentation of what was in the E-Trade Fund account at the time of the parties' marriage. Additionally, he testified that he does not remember the exact amount, but came up with the $40,000 figure based upon tax documents that he has reviewed. [Ms. Pentella] testified that she was not aware of [Mr. Pentella] having $40,000 in pre-marital monies at the time of the parties' marriage. Exhibit R indicates that the parties had a Harris Direct account as of January 1, 2003 with a balance of $27,892.00. The court will note that this was approximately two months after the parties' marriage.

[Mr. Pentella] bears the burden of demonstrating that he had pre-marital assets coming into the marriage. The only documentation that [he] provided was Exhibit R indicating that the Harris Direct account had $27,892.00 as of January 1, 2003. This number is not even consistent with the figure that [he] testified he believed was in the account, in the approximate amount of $38,000 to $40,000. Furthermore, [he] testified that sometime in 2006, these funds were commingled into the parties' savings account.[1]

{¶ 42} The court went on to state that Mr. Pentella failed to meet his burden of proof that he was entitled to any pre-marital credit with regard to that account.

{¶ 43} Even though Exhibit R is not before us, both the trial court and Mr. Pentella note that it showed the account had a balance of $27,892 in 2003, approximately two months after the date of the marriage. Thus, the only documentary evidence presented regarding this account

---

[1] Exhibit R is not a part of the record before us.

fails to demonstrate that it was opened prior to the marriage. The trial court was free to give little or no credit to Mr. Pentella's testimony regarding this account. Its decision that Mr. Pentella failed to prove that part of this account was his separate property is neither an abuse of discretion nor against the manifest weight of the evidence.

{¶ 44} The Fourth Assignment of Error is overruled.

**IV. The Parties Having Been Married for Ten Years, and Both Being Subject to Future Uncertainty as to their Respective Earning Abilities, the Trial Court Did Not Abuse its Discretion by Retaining Jurisdiction over Spousal Support for Forty Months**

{¶ 45} Mr. Pentella's Fifth Assignment of Error states as follows:

THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN RETAINING JURISDICTION OVER THE ISSUE OF SPOUSAL SUPPORT FOR FORTY MONTHS.

{¶ 46} Mr. Pentella contends that the trial court should not have retained jurisdiction over the issue of spousal support. In support, he argues that the marriage was only "a ten year marriage." He further argues that he is retired and Ms. Pentella is voluntarily unemployed.

{¶ 47} Domestic relations courts are granted broad discretion concerning awards of spousal support, and their orders will not be disturbed on appeal absent an abuse of discretion. *Smith v. Smith,* 182 Ohio App.3d 375, 2009-Ohio-2326, 912 N.E.2d 1170, ¶ 77 (2d Dist.). The trial court has the primary duty to resolve conflicts in the evidence. Mr. Pentella testified that he retired from his job shortly before the divorce, and that he retired prior to age 65. Ms. Pentella

testified that she had not worked for three years since the company she had worked for went out of business. She also testified that she has a progressive neurological disease, which she testified causes shaking and interferes with muscle function. The trial court noted that Ms. Pentella was worried that Mr. Pentella would obtain employment after the divorce and avoid spousal support payments. Indeed, Mr. Pentella intimated that his company had paid him for some consulting work following his retirement.

{¶ 48} We conclude that the trial court did not abuse its discretion by retaining jurisdiction over the issue of spousal support. A trial court may retain jurisdiction over the issue of spousal support even when no support is ordered. *Buch v. Buch*, 2d Dist. Montgomery Nos. 20878, 20881, 2005-Ohio-4491, ¶ 5. There is evidence in the record that, if believed by the trial court, supports a finding that Ms. Pentella has a chronic disease and had not worked for a number of years, while Mr. Pentella voluntarily resigned from his employment despite his ability to work. Mr. Pentella was earning more than $200,000 per year when he stopped working. The marriage lasted ten years. The trial court limited the term to three and a third years, and noted that either party could apply for support upon a showing of a change of circumstances.

{¶ 49} The Fifth Assignment of Error is overruled.


## V.   Conclusion

{¶ 50} All of Mr. Pentella's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH and WRIGHT, JJ., concur.

(Hon. Thomas R. Wright, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Richard A. Boucher
John Ruffolo
Hon. Timothy D. Wood